Case 3:19-cv-01119-NJR   Document 42   Filed 01/14/21   Page 1 of 9   Page ID #123

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MAURICE BROUGH,

          **Plaintiff,**

v.

          Case No. 19-cv-1119-NJR

MARCUS MARVIN,

          **Defendant.**

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on Defendant Marcus Marvin's Motion for Summary Judgment on Exhaustion of Administrative Remedies (Docs. 26, 27, 31). Plaintiff Maurice Brough filed a response (Doc. 32) to the motion. The Court held an evidentiary hearing on January 13, 2021.

### BACKGROUND

On October 15, 2019, Brough, an inmate of the Illinois Department of Corrections ("IDOC") who is currently housed at Shawnee Correctional Center, filed his Complaint pursuant to 42 U.S.C. § 1983 alleging Marvin was deliberately indifferent to his conditions of confinement (Doc. 1). Specifically, Brough alleged that he was placed in segregation on May 2, 2018, in a cell that lacked a light and running water (Doc. 11, p. 2). He was allowed to proceed on the following single count:

    Count 1:    Marvin was deliberately indifferent to the conditions of Brough's segregation cell in violation of the Eighth Amendment.

Page 1 of 9

Marvin argues that Brough failed to exhaust his administrative remedies against him. He argues that there is no record of Brough filing a grievance about his claims. No grievances were received by the Administrative Review Board ("ARB") or the grievance office (Doc. 27-2, p. 3; Doc. 31, pp. 3-4).

Brough argues that he submitted the grievance but that the grievance was not processed. On September 19, 2019, he submitted an offender request to locate the grievance and was told that Shawnee never received a grievance (Doc. 32, pp. 8 and 10). A September 22, 2019 grievance from Brough states that he submitted the grievance while at Shawnee and then was released from prison. He was re-arrested a few months later and was trying to locate the grievance (*Id*. at p. 6). His Complaint also indicates that he filed a grievance and then was released and re-arrested before the statute of limitations expired (Doc. 1, p. 4).

## LEGAL STANDARDS

Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's

exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if

> there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

### A. Illinois Exhaustion Requirements

As an IDOC inmate, Brough was required to follow the regulations contained in IDOC's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. 20 Ill. Administrative Code §504.800 *et seq.* The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 Ill. Admin. Code §504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 Ill. Admin. Code §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. 20 Ill. Admin. Code §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code §504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 Ill. Admin. Code §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code §504.850(e).

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 Ill. Admin. Code §504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 Ill. Admin. Code §504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified

in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 Ill. Admin. Code §504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 Ill. Admin. Code §504.850(f).

## ANALYSIS

Brough testified at the January 13 hearing that he filed his grievance within a couple days after his placement in segregation on May 2, 2018,[1] by placing the grievance in the cell door. He did not know whether it was picked up by an officer. He asked a counselor, whose name he does not know, about the grievance and was told it was never received. He also wrote to the counselor and asked other officials about his grievance; all responded that it was not received. Brough was released from segregation after 12 days.

Marvin submitted the Cumulative Counseling Summary (Exhibit 2) documenting Brough's contacts with prison staff, which shows that he spoke three times with a correctional counselor during his time in segregation, on May 4, 2018, May 9, 2018, and May 15, 2018 (Ex. 2, p. 8). The first two contacts reflect that Brough did not bring up the issue of his grievance or the cell conditions, and on May 15, 2018, Brough did not have any issues or concerns to discuss. *Id.* The prison had no documentation of receiving Brough's May 2018 grievance, nor of any inquiry from Brough regarding the grievance. *Id.*

---

[1] Defendant's Exhibit 2 documents that Brough was still in a regular housing unit on May 3, 2018 (Ex. 2, p. 8), contradicting Brough's testimony that he was placed in segregation on May 2. On May 4, 2018, he was in segregation when a correctional counselor completed a welfare check with him. *Id.*

On July 10, 2018, Brough was released on parole. On December 5, 2018, he was arrested again and was transferred to IDOC custody on March 12, 2019. Over six months later, on September 22, 2019, Brough wrote a grievance seeking a copy of his May 2018 grievance; the response indicated no record of that grievance was found (Doc. 32, p. 10; Ex. 2, p. 5).

If Brough did submit a grievance in May 2018 and never received a response, then his attempts at exhaustion would be deemed thwarted, and he would be allowed to proceed with his lawsuit. *See Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2000) (an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (a remedy can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his resources).

While Brough testified that he submitted a grievance in early May 2018 by placing it in the cell door, the Court does not find his testimony to be credible. The record does not contain any evidence of the grievance. Brough had three documented conversations with a counselor while he was in the segregation cell without running water, yet the counselor's summary does not reflect that Brough ever mentioned his purported grievance, contrary to his claim that he asked a counselor about it. There is no record of any effort by Brough to follow up on the matter after his release from segregation, even though he claims a counselor and other officials told him no grievance was ever received. On June 14, 2018, he met with a counselor regarding his parole site, and there is no mention of any inquiry about his grievance (Ex. 2, p. 8). Finally, when Brough was

returned to prison after his July 2018 parole and re-arrest, he waited for more than six months before he sought the records of the grievance he allegedly filed in May 2018.

Brough was required to file a grievance within 60 days of the discovery of the problems in his segregation cell. 20 Ill. Admin. Code §504.810(a). He was released on parole on July 10, 2018, which is more than 60 days after his placement in the cell on May 3 or 4, 2018. Brough stated he remained in segregation for 12 days, and the Counseling Summary reflects that his May 15, 2018, counseling contact took place while he was still in segregation. Even assuming that Brough was entitled to file a grievance over the segregation conditions within 60 days after his release from segregation (on May 15 or 16, 2018), his July 10, 2018 parole release was only 4 or 5 days before that 60-day period would have ended. The Court therefore finds that Brough's release did not render the prison's administrative remedies unavailable to him. Brough had ample time before his parole to follow up on the grievance he claimed to have filed in early May 2018 or to re-file it after allegedly being told it was not received.[2]

In consideration of the testimony and other evidence of record, the Court concludes that Brough did not submit a grievance in May 2018 and thus failed to exhaust his administrative remedies. Accordingly, the Motion for Summary Judgment will be granted.

---

[2] If Brough had filed suit while he was out of prison on parole, he would not have been subject to the exhaustion requirement. However, because he was again a prisoner at the time he filed this action, he must comply with the exhaustion requirement in 42 U.S.C. § 1997e(a). *See Kerr v. Puckett*, 138 F.3d 321 (7th Cir. 1988); *Saiger v. Funk*, Case No. 13-cv-3298, 2014 WL 3868223 at *1-2 (C.D. Ill. Aug. 6, 2014) (collecting cases).

CONCLUSION

Defendant Marcus Marvin's Motion for Summary Judgment on Exhaustion of Administrative Remedies (Docs. 26, 27, 31) is **GRANTED**, and this entire action is **DISMISSED without prejudice** for Brough's failure to exhaust his administrative remedies.

The Clerk is **DIRECTED** to close the case and enter judgment accordingly.

If Brough wishes to appeal the dismissal of this case, he must file a notice of appeal with this Court within thirty days of the entry of judgment. FED. R. APP. 4(a)(1)(A). If Brough does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien*, 133 F.3d at 467. He must list each of the issues he intends to appeal in the notice of appeal. *See* FED. R. APP. P. 24(a)(1)(C). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of judgment, and this 28-day deadline cannot be extended.

**IT IS SO ORDERED.**

DATED:   January 14, 2021

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**